Good morning, Your Honors. Good morning, Counsel. This is a case involving a preliminary injunction. Could you go ahead and state your name for the record? Sure. It's Kwesi Hutchful. Thank you. It's a case involving a preliminary injunction. The facts of the case are pretty clear that a preliminary injunction should have been issued. The district court abused its discretion and misinterpreted facts in the complaint and misapplied legal standards. And a preliminary injunction was not issued. Has the foreclosure sale taken place? No, it has not. Wells Fargo presents several arguments for why the preliminary injunction should not be issued. One of the arguments is a federal preemption. They don't really state what form of preemption, whether it's express, field, or a conflict preemption. So we're left to sort of infer ourselves. And if we look at a conflict preemption, it's clearly stated that usually a conflict preemption becomes the case when it's a physical impossibility for a federal law and a state law to coexist. Wells Fargo does not state whether it's a physical impossibility or an obstacle. It simply states that it obstructs its ability to perform or do what it needs to do, which is to foreclose on people's homes. In the case of Murbury v. The Superior Court, the judge states that Section 2923.5 simply requires a bank to call a borrower and inform the borrower 30 days prior to filing a notice of default that it intends to do so and to explore ways to avoid a conflict. This simple act does not interfere with the bank's ability to continue with the foreclosure process, and therefore, the federal preemption argument fails. The other argument Wells Fargo makes is that it discussed a loan modification with Hutchful for at least two years and contacted Hutchful 11 times. If you look at the complaint, it's obvious that these statements are false. Wells Fargo did not contact Hutchful 30 days prior to filing a notice of default when it was most important for Wells Fargo to do so. Wells Fargo has not provided any evidence whatsoever to prove that it contacted Hutchful, no times, no dates. It actually relies on the district court's judges. Mr. Hutchful, my understanding of the record is that you do not deny, though, that you received notice of the foreclosure sale. Is that correct? I received a posting on my door three weeks from the sale date that my property was actually on Christmas Eve, which Wells Fargo, again, denies that my property Is the record below, do you deny that you had conversations with Wells Fargo about the delinquency? No. I had conversations with Wells Fargo while I was still current. In February 2009, self-employed business was really slow. I looked into the future and saw potential problems. Property values were dropping. My income was rising. I think that the district court, what the district court had said was that Wells Fargo contacted you at least 11 times regarding modifications and that five of those were after the loan was delinquent. Yes. So that was a mistake that the district court made. And the district court actually made a statement in its April 25, 2011, order stating the court misinterpreted the fact in the complaint. The complaint does not allege that defendant contacted Hutchful between the time of delinquency and the time of the notice of default. So that was a mistake the district court judge made and corrected. So ultimately, what kind of relief are you seeking in this action? I'm seeking the relief that the law provides to be contacted and to be given the ability to explore a range of possibilities to avoid foreclosure, which Wells Fargo never did. Because you initiated contact and Wells Fargo did not initiate contact. Yes. So there's two separations here. There's contact during the period where I was current and was looking to do a loan modification to avoid delinquency. And then there's a period where I was actually delinquent. Section 2923.5 requires the bank to contact the borrower during the period of delinquency because that's when there's actually, it's useful to contact the borrower. I had conversations with Wells Fargo while I was current. But not while you were... When I fell late, I did not hear from them. Not a single phone call. Okay. I did not receive a notice of default. On Christmas Eve, I'm having dinner with my family. I open my door and there's a notice of sale. I look at the date. My property is about to be sold in three weeks. And then I call them and that's where this whole process started. And since then, you've had discussions with them, I assume. Since then, we have talked. We've had settlement conversations which haven't really led anywhere. They still haven't called me to discuss a range of options. They have revived a loan modification conversation that was started while I was current. And this is just a loan modification and they've asked me to apply for a loan modification. And Wells Fargo has a very interesting loan modification process. You send in your documents two weeks later. They don't have them. You fax them again. You fax them again. You state a specific income. They use a different income. You ask for an explanation. You get transferred around. The process is not very efficient. You should get a lawyer and file a cost action if that's the case. There's actually folks who have done that. Are you a member of one of those causes? No. I did get a letter from, I believe, the OCC and the Federal Reserve that I was – that it's possible that the foreclosure on my home is included in a group of foreclosures which were either wrong or whatever, and they've asked me to submit information. I think you should do that. Yes. And my other question is, have you participated in the Ninth Circuit mediation program? No, I have not. Would you be willing to participate in the Ninth Circuit mediation program to resolve this case? Sure, if it's beneficial, yes. Let me ask you, because I don't know if it's – Wardlaw was asking before, what do you want now in relief? I want Wells Fargo to follow the law. Okay, but what specifically do you want? I would like the foreclosure process to be stopped or postponed until Wells Fargo has complied with state law, until we've discussed all options to prevent foreclosure as required by 2923.5, until I've received a notice of default indicating that a foreclosure has started with the correct amounts, and possibly with this discussion of a range of options, we could come up with a possible way to avoid the foreclosure. So I want to avoid the unnecessary and wrongful foreclosure of my own. All right, thank you. Thank you. Good morning, and please support the appellant Robert Finley on behalf of Appellee Wells Fargo National Bank and Wells Fargo Home Mortgage. I think the briefs, for the most part, cover what is before the Court here today. From Wells – I won't belabor those points, but very quickly, from Wells Fargo's standpoint, 2923.5, while it may have a good purpose in mind, it does affect a national bank's right to bank, and it does affect a national bank's, in particular, the origination, processing, and specifically the servicing of a loan. 2923.5 is telling a servicer how they're supposed to contact a borrower, when they're supposed to contact a borrower, what they're supposed to say to that borrower, the timeframe in which they must speak with that borrower, and who has to initiate that contact. All of that affects the national bank's servicing of a loan. How would you distinguish the Aguayo case? Unfortunately, I have not read that case. I was listening to the discussion beforehand, hoping that you wouldn't ask me that same question. I'm not familiar with that case, and I noticed my brief went in about two weeks before that case came down. It's a recent case. Yes. Much like counsel earlier, I'll be looking at it right after this. Well, do we have to decide whether the application of California Civil Code Sections 2923.4 and 2924 to Wells Fargo is preempted by federal regulations, or can we affirm on other grounds? One point of clarification, that we're only speaking to 2923.5 as being preempted 2924, which are the foreclosure statutes, which traditionally fall – the foreclosure process itself traditionally falls within the – Nevertheless, Judge Gallagher, I was asking whether we have to decide the preemption question, or is there another ground unrelated to preemption on which it could be disposed of? No, Your Honor. Your Honor, I think the district court correctly decided here that the appellants have not met their burden to show the likelihood of success on the 2923.5 claims because Wells Fargo had two years of discussions with Mr. Hutchfield over possible loan modifications. So if we assume that – I'm sorry, 2923.5 is not preempted, then did Wells Fargo comply with the notice requirements? Absolutely. No, wait a second. Did Wells Fargo contact the borrower in person or by telephone in order to assess the financial situation and explore options for the borrower to avoid foreclosure? This requires the bank to contact the borrower. Did that occur here? Yes, Your Honor, and actually on page 297 of the record, Mr. Hutchfield states that, quote, defendants had only initiated contact seven times, period, two times, in May 2010, parentheses, plaintiff was not delinquent, end parentheses. Well, is there a requirement that the bank contact during the period of delinquency? I would say no, Your Honor. There's nothing in the statute that says that the – that I'm aware of, that the requirement to discuss loss mitigation or options for foreclosure occur during a default. And I think that would actually work against the purpose of the statute as well as the issue of who should initiate the contact. The purpose of the statute is to have a two-way communication discussion of options to avoid foreclosure, which occurred in this case. Under the appellate's theory, if applied to everybody, is a borrower calls in and says, I'm not in default, but I'd like to talk to you about options to foreclosure. The bank has to say, no, I'm sorry, I can't speak to you. Hang up. I'll call you back to initiate the contact, and I'll call you back after you're in default in order to comply with 2923.5. I think that's going to have a reverse effect on what the purpose of the statute is, is to have this dialogue to avoid foreclosure and also to avoid defaults. I don't know whether we can decide whether you complied with 2923.5 on the basis of this record. It requires a whole bunch of different steps during that period prior, preceding foreclosure. Your Honor, based on the admissions of appellants, he acknowledges that Wells Fargo initiated contact in May of 2010. It was on page 297. That was four months before the notice of default. So the question would then be whether that, whether the statute requires that that initiation occur post-default. And I don't believe that was in the statute or the intent of the statute, that that communication occur post-default. In fact, if anything, the goal here is to prevent defaults. I need to follow. I think I need to understand Section 29, the statutory section, a little better. I didn't really focus on that. Let's look at the property right now. My understanding is, as of recently at least, Mr. Hutchfield's in his second bankruptcy, and it matters on hold at this point in time. So he's in the residence. That is my understanding. We do not, my client does not own the property, and any foreclosure activity is stayed by the Bankruptcy Court at this time. Okay. So if, okay. So would you be opposed to us sending this to mediation? Absolutely not, provided that discussing it wouldn't violate any bankruptcy laws, and if we need to involve the Bankruptcy Court, that would be fine. Is this case stayed because of the bankruptcy? It's a Chapter 13, Your Honor, so my understanding is no. If it was a Chapter 7, the Chapter 7 trustee would be the one withstanding to pursue the matter. But my understanding, not being a bankruptcy expert, is that because it's Chapter 13, Mr. Hutchfield remains a debtor in possession withstanding to pursue these claims. Well, given that you're both willing to go to mediation, perhaps maybe you could resolve this mediation. Could you ask, you say you need to find out from the Bankruptcy Court whether there's anything wrong with going to mediation? I don't know if I need to find out from the Bankruptcy Court, as much as I just need to do a little research to make sure, and we may ultimately need the Bankruptcy Court's approval, but as far as sitting down and talking, we would be fine with that. We've done it several times, and we have no problem doing it again. Well, it may be that a mediation service can help to find out exactly what practically lies ahead and whether there is a practical way to get rid of this case. I think Mr. Hutchfield has fought very hard for what he wants, but I'm not sure quite what he would get out of this case at this point. And on the other hand, there are a lot of legal issues here that affect not just this case, but a lot of other cases, and I'm not sure you really want all of that decided in this case. So it might be in everybody's interest to find out exactly what would get this case solved, and maybe it's not possible, but we have a really good mediation service, and I think it's complicated by the fact that Mr. Hutchfield is in bankruptcy. Certainly that complicates the ability to get a solution, but it's worth trying. So unless we hear from you in a week, I think we can assume you're satisfied that there's no barrier because of the bankruptcy to referring it to mediation. I should be able to find out the answer to that within a week, Your Honor. Thank you. If we are to go to mediation, just wondering, would we come back and do this again? And if not, then I have one more issue I'd like to quickly address. Yes. No, you can address the issue. You'll just notify us that the... I mean, if the mediation didn't work out, we decide the case. Yes. And the mediator will tell us if it hasn't worked. But we don't know anything about what the Board has talked about. It's completely confidential. Then, Your Honor, moving on from 2923.5, appellant's other argument involves the notice of default and whether he received a notice. I would point out that the affidavit of mailing, which is in the record, the appellant says that the affidavit of mailing doesn't say, doesn't have his name on it and the property address. But attached to the affidavit of mailing is the notice of default itself, which has his name, and the 2923.5 declaration, which has his name and the property address. So as a package, that affidavit meets the requirements of 2924B, subsection E, giving a conclusive presumption that the notices were sent out. Second, while under the Mabry decision, the tender requirement does not apply to 2923.5, it still applies, as it has for decades, to the allegation that I didn't get notice of my foreclosure sale. So that if, as to the 2924 allegation of I didn't get my notice of default, the tender requirement still applies. And in order to raise that issue, appellant must be willing to tender. And last, on the notice of default, it's a moot issue. The appellant raises the point that I should have got my notice of default way back when. Let's assume that he didn't for a second. If you get your notice of default, you have 90 days to cure. At worst, let's say appellant received the notice of default at the time of this hearing in April of 2011. He's had 10 months with the notice of default in his hand. So any prejudice that would have been caused by not receiving it some time ago has been mooted by the fact that he's had it in his possession for 10 months, which is much longer than the statutory three-month period to cure. So I would say at this point, it's no harm, no foul on the notice of default, even if it wasn't sent, which we, of course, contend it was sent. So unless the Court has any other questions, I'd submit that the trial court did not err in denying the preliminary injunction. Thank you, counsel. Thank you. All right, we'll give you one minute. I just wanted to clarify something regarding 2923.5. It states that you are to contact the borrower 30 days before notice of default. We are dealing with a period of delinquency or default. A bank and a borrower can talk as much as they want prior to default to work out whatever they want. Once the borrower becomes delinquent, that's when 2923 becomes activated, and they're required to contact the borrower during that period of delinquency because the event that occurs after that contact is filing a notice of default. There's no need to file a notice of default if a borrower is not delinquent. So that contact needs to occur during the period of delinquency. And just to quickly address 2924, they're stating that they sent me copies of the notice of default. They gave me tracking numbers. I looked them up. They all show that they were returned back to Kyle Westring, which is the trustee. So there's no evidence stating that they mailed the notice of default to the correct address. They haven't given any evidence to show that. I did not receive them. I did not receive any notices. The deed of trust requires that the notice of default be actually delivered to the borrower's address. Now, what does a borrower do once they get a notice of default? They can take action right away. If you don't give the borrower that opportunity, they can't take any action. If they see that there's a notice of trustee sale on their door, three weeks before the sale, you have taken away all possibility for action if the bank had complied with the law. So what West Fargo has done is taken away every single opportunity I had to cure this foreclosure, and now I'm in bankruptcy as a result of that, as a result of being denied the possibility. Thank you. Thank you very much, both. Thank you. The case hysteric will be submitted. The court will stand on recess for the day.
judges: Reinhardt, Wardlaw, Callahan